UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION


DALLAS DUGGER,                          )
                                        )
            Plaintiff,                  )
                                        )
      vs.                               )        Case No. 1:04CV185  HEA
                                        )
ANTHONY J. PRINCIPI, Secretary,         )
Department of Veterans Affairs,         )
                                        )
            Defendant.                  )


## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary

Judgment, [Doc. No. 18].  Plaintiff opposes the motion.  For the reasons set forth

below, the Motion is granted.

## Introduction

Plaintiff filed this action against Defendant pursuant to the Rehabilitation Act,

29 U.S.C. §§ 791 and 794, as amended for alleged disability discrimination  and

pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 623 for alleged

age discrimination.  Plaintiff claims that he was denied a promotion because of his

age and disability. Plaintiff also claims intentional infliction of emotional distress,

which caused him to terminate his employment with Defendant.

**Facts and Background[1]**

Plaintiff has been employed by the Department of Veterans Affairs since January, 1993, particularly at the Veterans Affairs Medical Center in Poplar Bluff, Missouri. In March, 1994, Plaintiff was promoted to the position of GS-4 Telephone Operator. Plaintiff held this position until he terminated his employment. Plaintiff performed the work within his position well, according to his former supervisor, Mack Mullins, and his subsequent supervisor, Charles Hayden. Hayden had no complaints about Plaintiff's ability to work and considered him a good employee. To his credit, Plaintiff had even earned a performance award.

Plaintiff wore a brace on his left leg to work. He had service connected disabilities which include dysthymic disorder, limited motion of ankle, traumatic arthritis, knee condition and tinnitus.

Although not referenced in any deposition testimony, Plaintiff's affidavit, which was filed in response to Defendant's Motion for Summary Judgment avers that during the course of Plaintiff's employment under Hayden's supervision, Hayden periodically referred to Plaintiff as an "old man" and that Hayden further

---

[1] The facts set forth herein are taken from Defendant's Statement of Uncontroverted Material Facts and Plaintiff's "Additional Relevant Facts."

referred to Plaintiff as "Chester"[2]

On August 20, 2003, Defendant announced a vacancy for a

Telecommunications Specialist trainee, GS-391-5/7/9, with duty at its Poplar Bluff

Medical Center. Plaintiff applied for the position on August 24, 2003. Attached to

Plaintiff's application was form SF 50. The form notes that Plaintiff, as a veteran,

had a compensable disability. Further Plaintiff attached the Application for 10-point

Veterans Preference. The form was completed by Plaintiff and it specifically

denotes that Plaintiff has a "70% service connected disability.

Plaintiff and 11 other applicants were interviewed for the job.[3] The

interviews were conducted according to a performance based model. Defendant

established a panel of subject matter experts: Charles Chalk-Telecommunications

Specialist; Timothy Moore-Telecommunications Specialist; Delinda Bounds-

Information Technology Specialist; and Lynda Frey-Supervisor, Medical Supply.

Charles Hayden, Business Management Supervisor, the selecting official,

together with a local union president, developed eight interview questions for use by

the panel, and also formulated information about the responses. A numerical value

---

[2] Plaintiff claims that "Chester" refers to a character from the television series "Gun smoke" who walked with a "significant limp."

[3] Seventeen individuals, including Plaintiff applied for the job. Defendant certified, as qualified, Plaintiff and 14 other applicants.

from 1 (worst) to 10 (best) was to be assigned to each applicant response. The highest possible score from any panel member was therefore, 80.

The panel asked each applicant the same eight questions and, based on the applicant's response, assigned a numerical score. At the end of each interview, each panel member separately added the score for each response to arrive at a total numerical score between 0 and 80 for each applicant. The scores were then added together to arrive at an applicant's total score. The highest possible combined score that an applicant could receive was 320.

The total combined scores for each of the 12 interviewees were: 279 (selectee Daniel Overfield); 276; 274; 252; 250; 239; 232; 228; 219; 215; 202; and 199 (Plaintiff Dallas Dugger).

Hayden reviewed the scores and selected the highest scoring applicant to fill the vacancy. Hayden contacted Overfield's supervisor to discuss his conduct and performance. Hayden avers that his selection was based on a review of the total combined scores provided by the four members of the interview panel.

Hayden acknowledged at depositions that through conversations with Plaintiff, he became aware that Plaintiff had a 70% service connected disability and that Plaintiff had problems with his back. Hayden also acknowledged that Plaintiff would frequently, at least a couple of times a month, have to miss work to seek

medical treatment.

According to Plaintiff, the failure of Hayden to hire him was based on age and disability discrimination. Plaintiff contends that two specific interview questions establish this discrimination. Question three advises the interviewees that "this position requires that the employee physically install telephone access by climbing ladders, accessing crawl spaces, etc. How do you feel about performing these types of duties?" Hayden testified that he developed this question about ladders although the description of the job duties on the announcement made no mention of any such requirements.

Further, Hayden testified in his deposition that with respect to question number eight, "What is your primary motivation for applying for this position," he was interested in how long a person would stay in that position. Hayden also testified that if the successful candidate for the open position would have been an individual who was ready to retire, he "would have just been stuck with it," and that he would "love to have somebody in there who's there for 15 years[.]"

## Discussion

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);

*Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005); *Littrell v.*

*City of Kansas City, Mo.,* 459 F.3d 918, 921 (8th Cir. 2006).  The moving party has

the burden to establish both the absence of a genuine issue of material fact and that

it is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c);  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).

Once the moving party has met this burden, the nonmoving party may not rest on the

allegations in his pleadings but by affidavit or other evidence must set forth specific

facts showing that a genuine issue of material fact exists.  Fed.R.Civ.P. 56(e);

*Anderson* 477 U.S. at 256;  *Littrell* , 459 F.3d at 921.  "The party opposing

summary judgment may not rest on the allegations in its pleadings; it must 'set forth

specific facts showing that there is a genuine issue for trial.'"  *United of Omaha Life*

*Ins. Co. v. Honea,* 458 F.3d 788, 791 (8th Cir.2006) (quoting Fed.R.Civ.P. 56(e));

"'Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment.'  *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)."  *Hitt v. Harsco Corp.,* 356 F.3d

920, 923 (8th Cir. 2004).  An issue of fact is genuine when "a reasonable jury could

return a verdict for the nonmoving party" on the question.  *Anderson,* 477 U.S. at

248; *Woods,* 409 F.3d at 990.  To survive a motion for summary judgment, the

"nonmoving party must 'substantiate his allegations with sufficient probative

evidence [that] would permit a finding in [his] favor based on more than mere

speculation, conjecture, or fantasy.'  *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d

237, 241 (8th Cir. 1995)(quotation omitted)."  *Putman v. Unity Health System*, 348

F.3d 732, 733-34 (8th Cir. 2003).  A plaintiff may not merely point to unsupported

self-serving allegations, but must substantiate allegations with sufficient probative

evidence that would permit a finding in the plaintiff's favor.  *Wilson v. Int'l Bus.*

*Mach. Corp.,* 62 F.3d 237, 241 (8th Cir.1995). "The mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477

U.S. 242 at 252; *Davidson & Associates v. Jung* 422 F.3d 630, 638 (8th Cir. 2005).

## Age Discrimination

Plaintiff argues that this is a "mixed motive" case to be analyzed under the

standard set out in *Price Waterhouse v. Hopkins*, 490 U.S. 229 (1989) because of

the "direct" evidence of discrimination, *to wit*, Hayden's references to Plaintiff as

"old man" and "Chester."  Plaintiff's reliance on these statements is misplaced.

Aside from the fact that nowhere in his deposition does Plaintiff refer to these

discriminatory comments, but rather raises them for the very first time in his

response to the motion for summary judgment, these statements are insufficient to satisfy the *Price Waterhouse* standard for direct evidence of discrimination.

A plaintiff in an employment discrimination case may avoid summary judgment by following the *McDonnell Douglas* framework *or* by presenting direct evidence of discrimination. *Griffith v. City of Des Moines,* 387 F.3d 733, 736 (8th Cir.2004). Direct evidence in this context must be strong enough to show "a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the employment decision. *Thomas v. First Nat'l Bank of Wynne,* 111 F.3d 64, 66 (8th Cir.1997) (internal quotations omitted).

Direct evidence includes "evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude," where it is sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor. *Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 449 (8th Cir.1993) (internal quotations omitted). "But 'stray remarks in the workplace,' 'statements by nondecisionmakers,' and 'statements by decisionmakers unrelated to the decisional process' do not constitute direct evidence. *Id.*" *Schierhoff v. GlaxoSmithkline Consumer Healthcare, L.P.,* 444 F.3d 961, 964 (8th Cir 2006).

Plaintiff has presented absolutely no evidence that the comments attributed to Hayden were in any way even remotely connected to the decisional process. As such, the proper standard for analysis is that under the *McDonnell-Douglas* framework. The ADEA forbids employers from taking adverse employment actions against employees because of their age. *See* 29 U.S.C. § 623(a)(1). Because Plaintiff has not produced "strong (direct) evidence that ... discrimination motivated any alleged adverse employment action against him," he is required to "produce sufficient circumstantial evidence of illegal discrimination under the *McDonnell Douglas* paradigm." *Griffith v. City of Des Moines,* 387 F.3d 733, 736 (8th Cir.2004) (relying on *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04, (1973)).

Under the burden shifting framework of *McDonnell-Douglas*, once a *prima facie* case is established, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for the adverse employment action. *Putman*, 348 F.3d at 735. If the employer is able to articulate such a reason for the adverse employment action, the burden shifts back to the plaintiff to show that the employer's proffered reason is merely a pretext for discrimination. *Id*.

To make out a *prima facie* case of age discrimination, Plaintiff must show that he was at least forty years old, suffered an adverse employment action, was

meeting his employer's reasonable expectations at the time of the adverse employment action, and was replaced by someone substantially younger. *Lewis v. St. Cloud State University,* 467 F.3d 1133, 1136 (8th Cir. 2006).

Defendant concedes that Plaintiff can establish a *prima facie* case of age discrimination under the *McDonald-Douglas* analysis: Plaintiff is over forty, he suffered an adverse employment action, *i.e.*, he was not promoted; he was meeting his employer's reasonable expectations in his previous position; and the person hired for the position was substantially younger.

Defendant, however, has articulated a legitimate, non-discriminatory reason for not promoting Plaintiff. Defendant's evidence, through the affidavits of Hayden and the selection panel members, establishes that Defendant selected Overfield based on his total interview score. Defendant scored each of the applicants according to a predetermined scale of one through ten. The successful applicant scored the highest out of the twelve individuals interviewed. The method and criteria used during the interview process were based on the same questions posed to each of the interviewees. Each interviewer scored the applicants independently and the scores were subsequently tabulated. Objectively, the person with the highest score was awarded the position. Furthermore, Plaintiff scored the lowest out of all the interviewees. Defendant has satisfied its burden of articulating a

legitimate, nondiscriminatory reason for the adverse action.

The burden, therefore shifts back to Plaintiff to establish that the reason given was in fact a pretext for the discrimination. Plaintiff can produce no admissible evidence to establish pretext. Although Plaintiff objects to two of the questions as, in essence, being calculated to discriminate against him, Plaintiff's argument is without merit. Assuming *arguendo*, that these questions were improper, Plaintiff would still not have succeeded in securing the position. That is, were Plaintiff to have received an additional twenty points (assuming that he received no points initially for his answers to these questions), he would have had a score of 219, nowhere near the highest score.

Defendant has submitted Hayden's affidavit, as well as affidavits from the panel of interviewers that clearly establish that there was no discrimination against Plaintiff. Hayden did not provide the panel members with specific instruction on how to assign points; he did not predetermine which applicant would be given the position; nor did he discuss, suggest or request any of them to consider age and/or disability in arriving at any score for any of the candidates. Defendant has articulated a legitimate nondiscriminatory reason for selecting Overfield, the fact that he scored the highest for his answers to the interview questions

Accordingly, under the *McDonnell-Douglas* analysis, Plaintiff must present

evidence that this reason is a pretext for improper discrimination.  To satisfy this

burden in the context of a properly supported motion for summary judgment, the

plaintiff must "identify specific facts in the record showing that the offered reason

was merely pretext and that illegal [discrimination] was the true motivating factor."

*Crossley v. Georgia-Pacific Corp.,* 355 F.3d 1112, 1113 (8th Cir.2004) (per

curiam).  "Merely disputing [the employer's] reason is insufficient[.]" *Stuart v.*

*General Motors Corp,* 217 F.3d 612,  634 (8th Cir. 2000).

Plaintiff has failed to satisfy his burden.  Although Plaintiff makes vague

references in his Complaint that Hayden assured Overfield the position, the record is

completely devoid of evidence to support this contention.  Plaintiff further attempts

to establish pretext through Hayden's deposition testimony that he developed the

question regarding how long the applicant intended to stay in the position.  Plaintiff

claims this demonstrates discrimination toward him.  However, Hayden's testimony

explains that this question was intended to assess whether the applicant intended to

use the position as a "stepping stone" toward another position or whether the

applicant would remain in the position.

Moreover, Plaintiff's argument that he was "more qualified" for the position

than Overfield does not establish pretext.  Plaintiff's belief that he is more qualified

does not overcome Defendant's actual reason for hiring Overfield.

"'Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions.... Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Elrod,* 939 F.2d at 1470 (internal quotation omitted); *see also Clay v. Hyatt Regency Hotel,* 724 F.2d 721, 725 (8th Cir.1984) ('While an employer's judgment may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was pretext for illegal discrimination.'). *Harvey v. Anheuser-Busch, Inc*. 38 F.3d 968, 973 (8th Cir. 1994).

**Disability Discrimination**

Section 504 of the Rehabilitation Act provides in relevant part that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794. "To prevail on a claim under § 504, a plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) he was denied the benefits of a program or activity of a public entity which receives federal funds; and (3) he was discriminated against based on his disability." *Gorman v. Bartch,* 152 F.3d 907, 911 (8th Cir.1998) (footnote omitted) (citing § 794(a)); *Wojewski v. Rapid City Regional Hosp., Inc.*, 450 F.3d 338, 344 (8th Cir. 2006).

"Although the ADA has no federal funding requirement, 'it is otherwise similar in substance to the Rehabilitation Act, and "cases interpreting either are applicable and interchangeable." ' *Gorman,* 152 F.3d at 912 (quoting *Allison v. Dep't of Corr.,* 94 F.3d 494, 497 (8th Cir.1996)). Besides the funding requirement, another important difference between the two acts is that the Rehabilitation Act 'imposes a requirement that a person's disability serve as the *sole* impetus for a defendant's adverse action against the plaintiff.' *Amir v. St. Louis Univ.,* 184 F.3d 1017, 1029 n. 5 (8th Cir.1999) (emphasis original); *see also* § 794(a)." *Wojewski,* 450 F.3d at 344.

If the plaintiff lacks direct evidence of discrimination,[4] he must avoid summary judgment by creating the requisite inference of unlawful discrimination under the *McDonnell-Douglas* framework. *Griffith,* 387 F.3d at 736; *Libel v. Adventure Lands of America, Inc.*, 2007 WL 1120329, *4 (8th Cir. 2007).

To establish a prima facie case of discrimination under the ADA, a plaintiff must show he: (1) has an ADA-qualifying disability; (2) is qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (3)

---

[4] Plaintiff's attempt to establish direct evidence of discrimination based on Hayden's "Chester" remark fails equally in this analysis because there is not evidence in the record demonstrating that the remarks, if in fact said, were said in conjunction with or in close proximity to the decision to hire Overfield.

suffered adverse employment action.  *Id.*

Assuming Plaintiff can establish an ADA-qualifying disability, sufficient to

satisfy his burden of initially making a *prima facie* showing of discrimination, a fact

which Defendant disputes, once again, Plaintiff fails to present admissible evidence

that the reason articulated by Defendant for hiring Overfield was pretextual.

Plaintiff attempts to establish direct evidence pretext by pointing to question three

which inquired about the applicant's feelings on climbing ladders and entering crawl

spaces, etc.  Plaintiff argues that this question was designed to exclude him from the

position.  However, even were Plaintiff to have received the most number of points

with regard to this question, he still would not have been rated higher than

Overfield.  Notwithstanding, the inference Plaintiff attempts to draw from this

question is not reasonable in the context asked.  Plaintiff asks the Court to infer

from the question that Defendant is attempting to discriminate against Plaintiff

because he wears a brace.  This inference is an absurdly extreme far-fetched

"inference" .  Realistically, it can be inferred that the question was designed to

determine if *any* of the applicants had inhibitions regarding heights, closed spaces,

etc. *i.e.*, common phobias which would inhibit the applicant's ability to perform this

particular job.  Plaintiff's complaint that this aspect of the job was not listed on the

announcement fails to establish pretext.  The fact that it was not included on the

announcement is insignificant.  One would be hard pressed to find any job description which includes every specific, minute detail of a job.

Plaintiff's own deposition testimony belies his contention that he has presented evidence sufficient to overcome Defendant's articulated reason for hiring Overfield.  When asked about asking for special limitations, Plaintiff stated that he did not believe he needed to.  When asked what evidence he had that Hayden treated him differently because he wore a brace or because he was older, Plaintiff responded that he just "felt" it.  When asked if Hayden ever suggested that he wasn't showing up for work because he had an ankle brace or because he was too old to go to work, Plaintiff responded that he did not.

The inferences Plaintiff seeks are not reasonable based on the record before the Court.  Plaintiff has failed to establish that the reason given by Defendant for the decision to award the position to Overfield instead of Plaintiff are not pretextual, and therefore, Defendant is entitled to summary judgment.

As Defendant correctly argues, and Plaintiff fails to dispute, because the record is devoid of evidence of discrimination based either on Plaintiff's age and/or disability, Plaintiff's claim of emotional distress also evaporates.

## Conclusion

Plaintiff has failed to satisfy his burden under the *McDonnell-Douglas*

paradigm requiring that he establish a genuine issue of material fact regarding whether the articulated reason given for the decision not to hire him was a pretext for discrimination. As such, Defendant is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, [Doc. No. 16], is granted.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

Dated this 26th day of April, 2007

_____
    HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE